## Edna M. Russell, Appellant, v. E. H. Fagerburg et al., Appellees.

### Gen. No. 7,922.

1. GUARDIANSHIP—*prerequisites to binding ward by settlement with guardian after attaining majority.* In order to bind a ward by a transaction with her guardian, even after she has attained her majority, it must appear that she acted with deliberation and with full knowledge of all the material facts.

2. GUARDIANSHIP—*presumption as to influence of guardian in respect of transactions with ward.* Because of the confidential relations existing between a guardian and his ward a presumption arises, as to transactions between them, that the ward acted under the influence of the guardian, and hence such transactions, if prejudicially affecting the interests of the ward, will be held constructively fraudulent.

3. GUARDIANSHIP—*presumption as to influence of guardian in respect of transactions with ward after termination of guardianship.* The presumption that a ward, in respect of transactions with her guardian, acted under his influence, applies likewise even after the guardianship has ended, when there has not been a final accounting and settlement of the guardianship affairs, and such transactions, if injurious to the interests of the ward, will be set aside, unless shown to have been the deliberate act of the ward with full knowledge of her rights.

4. GUARDIANSHIP—*burden of proof as to consent and knowledge of ward in respect of settlement with guardian after attaining majority.* Where a transaction between a guardian and his ward, consummated after the ward has attained her majority but before the settlement of his accounts, is attacked in equity as injurious to the ward's interests, the burden is upon the guardian to prove the circumstances of knowledge and free consent on the part of the ward.

5. GUARDIANSHIP—*jurisdiction of equity to compel accounting by guardian after approval by county court of settlement and report.* Equity has jurisdiction of a suit to compel an accounting by a guardian to his ward notwithstanding the county court has approved a settlement of the guardian with the ward and his final report of the guardianship, where the bill alleges that the settlement, which was injurious to the ward, was made by her in reliance upon false representations of the guardian, and it appears

that the ward has no adequate remedy at law for relief against the guardian and his sureties.

Appeal by plaintiff from the Circuit Court of Ford county; the Hon. FRANK G. LINDLEY, Judge, presiding. Heard in this court at the October term, 1925. Reversed and remanded with directions. Opinion filed April 15, 1926. Rehearing denied June 22, 1926.

MAURICE B. STERN and OGLEVEE & FRANKLIN, for appellant.

SCHNEIDER & SCHNEIDER, for appellees.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

In this case a bill in equity for accounting and relief was filed in the circuit court of Ford county by the appellant, Edna M. Russell, against E. H. Fagerburg, guardian of the appellant, and Charlotte M. Fagerburg and H. B. Shaw, who are sureties on the guardian's bond. The bill alleges that E. H. Fagerburg was appointed guardian of the appellant by the county court of Ford county, January 30, 1920; that he filed his guardian's bond in the sum of $25,000, on which Charlotte M. Fagerburg and H. B. Shaw were sureties; that letters of guardianship were issued thereupon February 3, 1920; that the appellant was a minor of the age of 14 years at that time. The bill further alleges that the guardian neglected to file an inventory of the assets which came into his hands as guardian; that he filed no report in the estate until January 23, 1924, which was the final report after the appellant had arrived at her majority; that the guardian received large amounts of money belonging to the appellant, as shown by the final report, but that appellant does not know whether said report of receipts of moneys by the guardian is correct or not, and that the said report of receipts does not show from what sources

the same are received. It is also alleged that the guardian, in disregard of his duty and obligations, wrongfully, and in direct violation of the statute, loaned large sums of money belonging to the appellant, without the order of the court, and took promissory notes of borrowers without mortgage security; that appellant reached her majority on January 7, 1924; that on January 23, 1924, the appellee Fagerburg as guardian filed an alleged final report as guardian, containing a list of receipts and disbursements purporting to show the amount received by him as guardian, and the amounts of money paid out by him as guardian, and purporting to show a balance due her of $6,750.31; that at the time of filing the report, he represented to the appellant that the note of the First National Bank of Paxton, Illinois, for $200, and a note signed by A. T. Carlson and others for $32,500, on which there was credited $1,500, and a balance due of $1,000, were perfectly good and safe investments of the funds belonging to the appellant; that she does not know whether the note signed by the First National Bank of Paxton, and turned over to the appellant by the guardian, is good or not, and that A. T. Carlson, maker of the $2,500 note, on which there was due $1,000 plus interest, was adjudicated a bankrupt in the United States Federal Court at East St. Louis, March 11, 1924. It is also alleged in the bill that she had no counsel of her own in the matter of the final settlement of the guardianship, and that she had no business experience, and relied upon the representations of her guardian as to the financial responsibility of the makers of the notes referred to. It is also alleged in the bill that the receipt signed by the appellant, which is attached to the final report of the guardian, was obtained from her by the guardian by false and fraudulent representations made by the guardian, upon which she relied; that she is still in possession of the note of the First

Russell v. Fagerburg et al., 241 Ill. App. 96.

National Bank of Paxton, and the Carlson note, and that she is desirous and ready and willing to turn said notes back to Fagerburg at such time as the court may direct. The prayer of the bill is that the appellee Fagerburg may be required to account fully and completely for all moneys received by him as guardian and that he be required to take back the notes in question and be required to pay appellant the amounts due, with interest thereon, and that the appellees Charlotte Fagerburg and H. B. Shaw, as sureties on the guardian's bond, may be required to pay the amount found due to her, if the guardian shall fail to pay the amount, and that she have such other and further relief in the premises as equity may require. The appellees filed an answer to the bill, and the case was thereupon referred to the master, who, after hearing the evidence, made a report finding that the appellant was not entitled to the relief sought in her bill of complaint, and that the bill should be dismissed for want of equity. Exceptions were filed to the master's report, and upon the hearing before the court, the exceptions were overruled, and a decree entered in accordance with the findings of the master, and dismissing the bill for want of equity. This appeal is prosecuted from the decree.

The evidence taken substantially sustains the averment of the bill of complaint, but the principal controversy in this case concerns the Carlson note, in which the guardian had invested the sum of $2,500 of his ward's money, and upon which note there was a balance due of $1,000. This note was six months past due at the time Fagerburg made his final report as guardian, in accounting for the funds of the guardianship, and at the time of settlement of the guardianship matters. The evidence shows that Fagerburg at this settlement turned over the notes referred to, which had been taken by him for investments of the ward's money, to the appellant in payment

and discharge of the amount due from him as guardian, according to his report, and that the appellant accepted these notes concerning which she knew nothing, as a part of that settlement, but that she accepted the Carlson note upon the representation by her guardian; that the note would be paid by Carlson the following month of February; and upon the faith of that representation accepted. The evidence also shows that the note was not paid, and that on the 11th day of the next month (March) Carlson was adjudged to be a bankrupt.

It is contended that the settlement made by her guardian is legally binding on the appellant because it was made after she had become of age. It is clear from the authorities, however, that a settlement brought about by a guardian with his ward, under the circumstances disclosed by the evidence, will not be allowed to operate as a bar to obtaining relief in a court of equity. To bind the ward in a transaction with the guardian, it must be shown that she acted after the termination of her legal disability with deliberation, and with full knowledge of all the material facts. From the confidential relation existing between the guardian and his ward, it will be presumed that the ward acts under the influence of the guardian, and all transactions and dealings with him, prejudicially affecting the interests of the ward, will be held to be constructively fraudulent. This presumption continues even after the guardianship has ended, when the matters of accounting between the guardian and the ward have not yet been fully settled, and transactions between them, during the presumed influence, which are injurious to the interest of the ward, will be set aside, unless shown to have been the deliberate act of the ward after a full knowledge of his or her rights. In all such cases, the burden rests upon the guardian to prove the circumstances of knowledge and

free consent on the part of the ward. *Gillett v. Wiley,* 126 Ill. 310.

It is contended that the action of the county court approving the settlement made by the guardian in this ·case, and approving the guardian's report and the subsequent orders in connection therewith, are *res adjudicata;* that the appellant should have pursued a remedy which the law provides, by appealing from the orders of the county court, and that therefore there is no occasion for the interference of a court of equity. It is apparent that the remedy at law pointed out was not adequate for appellant to obtain the relief against her guardian, and the sureties on his bond, in compelling the full and proper accounting which she was entitled to under the averments of her bill of complaint, and for the alleged wrongful acts and deceptions of her guardian. The jurisdiction of a court of equity to grant relief in cases of this character is well established. "Guardians are regarded as trustees, and may be compelled in chancery to render an account before, as well as after, the termination of the guardianship. (*Bond v. Lockwood,* 33 Ill. 212.) * * * The provisions of the statute in relation to guardians were not designed as a complete code, but were enacted to confer upon the county court power to appoint guardians and to regulate their conduct in accordance with their duties at common law." *Chapman v. American Surety Co.,* 261 Ill. 594; *Schmidt v. Shaver,* 196 Ill. 108; *Hayes v. Massachusetts Mut. Life Ins. Co.,* 125 Ill. 626.

For the reasons stated, the decree is reversed and the cause is remanded with directions to require the appellee, E. H. Fagerburg, to make a full and proper accounting as guardian in accordance with the prayer of the bill, and pay to the appellant the amount found to be due the appellant upon such accounting, with interest, and in case of the guardian's failure to pay the same, to require appellees Charlotte M. Fagerburg

and H. B. Shaw, to pay the same as sureties on the guardian's bond.

*Reversed and remanded with directions.*